Entered: September 23rd, 2025
Signed: September 20th, 2025



**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## AT GREENBELT

In re:

ROBBY D. GARNER,

       Debtor.

Case Number:  24-16770-MCR
Chapter 7

MATTHEW W. CHENEY, THE ACTING
UNITED STATES TRUSTEE FOR REGION 4,

       Movant,

v.

ROBBY D. GARNER,

       Respondent.

## <u>MEMORANDUM OPINION</u>

Before the Court are a Motion for Partial Summary Judgment on Motion to Dismiss for

Abuse [Dkt. No. 44] (the "<u>Motion for Summary Judgment</u>") filed by the Acting United States

Trustee for Region 4 (the "<u>U.S. Trustee</u>"),[1] and an objection to the Motion for Summary Judgment

---

[1] At the time the Motion for Summary Judgment was filed, the Acting U.S. Trustee was Gerard R. Vetter.  At the time this Memorandum Opinion is issued, the Acting U.S. Trustee is Matthew W. Cheney.

[Dkt. No. 45] [the "Objection") filed by Robby D. Garner (the "Debtor"). The questions presented are whether the Debtor's mortgage is a consumer debt for purposes of Section 707(b)(1) of the Bankruptcy Code and whether the Debtor's debts are primarily consumer debts. For the reasons set forth below, the Court answers both questions in the affirmative and grants partial summary judgment in favor of the U.S. Trustee.

## I.    Background

On August 12, 2024, the Debtor filed a Chapter 7 Voluntary Petition [Dkt. No. 1] (the "Petition"). In response to Question 16a on the Petition, which asks if a debtor's debts are primarily consumer debts,[2] the Debtor answered "no." On September 6, 2024, the Debtor filed his bankruptcy schedules [Dkt. No. 18]. The Debtor's Schedule D reflects two secured creditors: (1) LoanDepot.com LLC with a claim of $361,162.00 arising from a mortgage secured by the Debtor's residence at 2755 Golden Gate Place, Waldorf, Maryland 20601 (the "Mortgage Loan"), and (2) Prince George's Community Federal Credit Union with a claim of $6,875.61 arising from a car loan secured by a 2007 GMC Yukon Denali. The Debtor's Schedule E/F reflects one priority unsecured claim in the amount of $8,228.05 for income taxes owed to the Internal Revenue Service (the "IRS") and eleven general unsecured claims totaling $164,508.00.

Also on September 6, 2024, the Debtor filed his Official Form 122A-1: Chapter 7 Statement of Your Current Monthly Income ("Form 122A") and an Official Form 122A-1Supp: Statement of Exemption from Presumption of Abuse Under § 707(b)(2) (the "Form 122A Supplement") [Dkt. No. 20].[3] In response to Question 1 on the Form 122A Supplement, which

---

[2] Question 16a explains: "*Consumer debts* are defined in 11 U.S.C. § 101(8) as 'incurred by an individual primarily for a personal, family, or household purpose.'"

[3] All references to the "Bankruptcy Code" are to Title 11 of the United States Code, and all references to a "Section" are to a section of the Bankruptcy Code unless otherwise stated.

asks if a debtor's debts are primarily consumer debts,[4] the Debtor again answered "no."  Line 1 of the Form 122A Supplement instructs a debtor who answered "no" to Question 1 to indicate on the top of Form 122A that "there is no presumption of abuse."  The Debtor followed these instructions and indicated on his Form 122A that there is no presumption of abuse arising in his bankruptcy case.

On September 27, 2024, the U.S. Trustee filed a Statement of Presumed Abuse [Dkt. No. 25] in the Debtor's case.  The Statement of Presumed Abuse states the following:

> As required by 11 U.S.C. Sec. 704(b)(1)(A), the United States Trustee has reviewed the materials filed by the debtor(s).  Having considered these materials in reference to the criteria set forth in 11 U.S.C. Sec. 707(b)(2)(A), and, pursuant to 11 U.S.C. Sec. 704(b)(2), the United States Trustee has determined, based upon information and belief and subject to further discovery, that: (1) the debtor's(s') case should be presumed to be an abuse under section 707(b); and (2) the product of the debtor's current monthly income, multiplied by 12, is not less than the requirements specified in section 704(b)(2)(A) or (B).  As required by 11 U.S.C. Sec. 704(b)(2) the United States Trustee shall, not later than 30 days after the date of this Statement's filing, either file a motion to dismiss or convert under section 707(b) or file a statement setting forth the reasons the United States Trustee does not consider such a motion to be appropriate.  Debtor(s) may rebut the presumption of abuse only if special circumstances can be demonstrated as set forth in 11 U.S.C. Sec. 707(b)(2)(B).

Thereafter, on October 24, 2024, the U.S. Trustee filed a Motion to Dismiss Case for Abuse [Dkt. No. 27] (the "Motion to Dismiss").  The Motion to Dismiss asserts that the Mortgage Loan represents the majority of the Debtor's debt and is a consumer debt, thereby giving rise to the presumption of abuse under Section 707(b)(2)(A)(i), which the U.S. Trustee asserts has not been rebutted by the Debtor in accordance with Section 707(b)(2)(B)(i).  Accordingly, Count I of the

---

[4] Like Question 16a of the Petition, Question 1 of the Form 122A Supplement explains: "*Consumer debts* are defined in 11 U.S.C. § 101(8) as 'incurred by an individual primarily for a personal, family, or household purpose.'"

Motion to Dismiss argues that, based on the alleged unrebutted presumption of abuse, the Debtor's bankruptcy case should be dismissed pursuant to Section 707(b)(2).

Count II of the Motion to Dismiss seeks dismissal of the Debtor's bankruptcy case pursuant to Section 707(b)(3)(B).  This section provides that, where the presumption of abuse under Section 707(b)(2)(A)(i) does not arise or is rebutted, the court must consider whether the totality of the circumstances of the debtor's financial situation demonstrates abuse.  11 U.S.C. § 707(b)(3)(B). The U.S. Trustee argues that, in light of the Debtor's ability to repay a significant portion of his debts, the totality of the circumstances of his financial situation demonstrates abuse.

On November 7, 2024, the Debtor filed an opposition to the Motion to Dismiss [Dkt. No. 31] (the "Opposition").  In his Opposition, the Debtor argues that the question of whether and how a home mortgage should be factored into the consumer/business debt calculation has not been decided in this district.  Therefore, the Debtor requested that a status hearing be held to set a full briefing schedule on this issue.

On November 20, 2024, the Court held a status conference at which the parties agreed to address the legal issue of how a home mortgage should factor into the consumer/business debt calculation for purposes of Section 707(b)(2) before litigating the factual issues of whether there is a presumption of abuse and whether the totality of the circumstances regarding the Debtor's financial situation demonstrates abuse.  The parties agreed to file a stipulation of facts, and the U.S. Trustee agreed to file a motion for partial summary judgment regarding whether the Debtor's mortgage is a consumer debt and whether the Debtor's debts are primarily consumer debts.  The parties agreed to then litigate the factual issues if the Motion to Dismiss is not fully resolved at the summary judgment stage.

On February 13, 2025, the U.S. Trustee filed a Stipulation of Facts for Partial Summary Judgment on Motion to Dismiss for Abuse [Dkt. No. 42] (the "Stipulation of Facts").   The Stipulation of Facts is based on the Debtor's representations to which the U.S. Trustee agrees.

## II.    The Motion for Summary Judgment

On March 26, 2025, the U.S. Trustee filed the Motion for Summary Judgment seeking a determination that the "Debtor's consumer debts are greater than one-half of the entire debt total necessitating a finding that his debts are 'primarily consumer debts' under Section 101(8) of the Bankruptcy Code." Motion for Summary Judgment at 9. The Motion for Summary Judgment includes two helpful charts based on the  Stipulation of Facts.  The first chart sets forth the debts that the Debtor asserts were incurred for a personal, family, or household purpose:

| | Schedule D: Secured Creditors: | |
|---|---|---|
| 1 | LoanDepot.com LLC (secured by the Debtor's residence) | $361,162.00 |
| 2 | Prince George's Community Federal Credit Union (secured by the Debtor's vehicle) | $6,875.61 |
| | **Schedule E/F: Unsecured Creditors** | |
| 3 | Navy Federal Credit Union | $13,951.00 |
| 4 | Prince George's Community Federal Credit Union | $5,910.00 |
| 5 | Prince George's Community Federal Credit Union | $266.00 |
| | **TOTAL** | **$388,164.61** |

The second chart sets forth the debts that the Debtor asserts were not incurred for a personal, family, or household purpose:

| | Schedule E/F: Unsecured Creditors: | |
|---|---|---|
| 1 | Andrews Federal Credit Union | $18,234.00 |
| 2 | Apple Federal Credit Union | $11,948.00 |
| 3 | Commonwealth One Federal Credit Union | $22,987.00 |
| 4 | Lafayette Federal Credit Union | $18,274.00 |
| 5 | NASA Federal Credit Union | $20,505.00 |
| 6 | Next Mark Credit Union | $28,141.00 |

| 7 | State Employees Credit Union of Maryland | $15,016.00 |
| 8 | Tower Federal Credit Union | $9,276.00 |
| | **TOTAL** | **$144,381.00** |

In addition to the debts set forth above, the Debtor stipulated that he owed a priority unsecured claim of $8,228.05 to the IRS as of the date of filing for income taxes. The U.S. Trustee contends that the Debtor's total debt equals $540,773.66, and of that amount, $388,164.61 or approximately 72% represents debts incurred for a personal, family, or household purpose.

The U.S. Trustee maintains that the sole issue before the Court is whether the Mortgage Loan constitutes consumer debt for purposes of Section 707(b). The U.S. Trustee relies on *Kestell v. Kestell (In re Kestell)*, 99 F.3d 146 (4th Cir. 1996) and *In re Durant*, 586 B.R. 212 (Bankr. D. Md. 2018) (Harner, J.) to argue that the determinative question for whether a debt is a "consumer debt" is the purpose for which the debt was incurred. In *Kestell*, the United States Court of Appeals for the Fourth Circuit affirmed the decisions of the lower courts in denying the debtor a discharge. 99 F.3d at 150. The Fourth Circuit stated that, although the bankruptcy court denied the debtor a discharge under Section 727(a)(2), the debtor's petition "is more appropriately dismissed under sections 707(b) and 105(a)." *Id.* at 149. The Fourth Circuit explained:

> Section 707(b) provides that a court "may dismiss a case filed by an individual debtor under [Chapter 7] whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of [Chapter 7]." Kestell is an individual debtor, and more than half his debt is the lump-sum amount owed to his former wife from the divorce judgment. Since this debt was not incurred with a profit motive or in connection with a business transaction, it is considered "consumer debt" for purposes of section 707.

*Id.* (citations omitted). In *Durant,* the Court recognized that it is bound by the principles set forth in *Kestell* and must evaluate the facts of a case and "the meaning of the term consumer debt under

section 101(8) based on, among other things, the context of section 707(b) and applicable precedent." 586 B.R. at 217.

The U.S. Trustee further argues that it is improper and unnecessary to consider the legislative history of Section 707(b) because the term "consumer debt" is clearly and unambiguously defined in Section 101(8) and it is well-established that home mortgages are considered consumer debt. *See* Motion for Summary Judgment at 8 (citing *In re Evans*, 334 B.R. 148, 151 (Bankr. D. Md. 2004); *Price v. U.S. Trustee (In re Price),* 280 B.R. 499 (9th Cir. BAP 2002), *aff'd* 353 F.3d 1135 (9th Cir. 2004); *In re Funk,* 146 B.R. 118 (D. N.J. 1992); *Cox v. Fokkena (In re Cox)*, 315 B.R. 850, 855 (8th Cir. BAP 2004); and *In re Megginson,* No. 06-12034-JS, 2007 WL 2609783, at *3 (Bankr. D. Md. Sept 4, 2007)). As such, the U.S. Trustee argues the overall ratio of the Debtor's consumer to non-consumer debt mandates a finding that the Debtor's debs are "primarily consumer debts" for purposes of Section 707(b).

In opposition, the Debtor argues that he owes $144,381.00 on account of eight scheduled unsecured non-priority business debts, $8,228.05 to the IRS (the "IRS Claim"),[5] and $20,127.00 on account of three unsecured consumer debts and that he has two secured claims against his residence for which the Debtor has chosen to retain the collateral and continue paying the debts.[6] The Debtor argues that, under these circumstances, "it cannot truly be said that the Debtor has primarily consumer debts, nor can it be argued that he is filing bankruptcy to discharge consumer debts." Objection at 2. The Debtor maintains that he filed for bankruptcy "as the result of business

---

[5] The Court notes that the IRS Claim is neither a consumer debtor nor a business debt. Rather, courts commonly refer to tax claims as "interstitial" debt. *See In re Durant*, 586 B.R. at 220 ("interstitial" debt includes tax claims which are "characterized as involuntary with a purpose to benefit the public").

[6] The statement in the Objection that there are two secured claims against the Debtor's residence appears to be a mistake. Per the Debtor's Schedule D and the Stipulation of Facts, one of the secured claims in the amount of $6,875.61 is secured by a 2007 GMC Yukon Denali.

failure" and that "Congress did not want to make Chapter 7 unavailable to such debtors simply because they had a mortgage."  Objection at 2.  The Debtor states:

> This reality is supported by the legislative history of the Bankruptcy Code.  Statements by Senator Dennis DeConcini and Congressman Donald Edwards in connection with Section 707 of the Bankruptcy Code indicate that "[a] consumer debt does not include a debt to any extent the debt is secured by real property." 124 Cong.Rec.S. 17,406 (daily ed. Oct. 6, 1978) (statement of Senator Dennis DeConcini); 124 Cong.Rec.H. 11,090 (daily ed. Sept. 28, 1978) (statement of Congressman Donald Edwards).

*Id.*  The Debtor further relies on *In re Jones*, No. 08–05676–8–ATS, 2009 WL 102442 (Bankr. E.D.N.C. Jan. 12, 2009), in which the United States Bankruptcy Court for the Eastern District of North Carolina opined: "[b]ecause of how easily a mortgage can skew the claims in favor of consumer debt, some courts have suggested that debt secured by real property should be excluded from consideration."  *Jones*, at *2.  The Debtor argues that "[i]ncluding debts secured by real property in [the Section 707(b)] analysis leads to absurd results to the detriment of debtors with small businesses" and that, "[i]f the Debtor were to sell his house, or allow it to be foreclosed (thus resulting in the payoffs of the mortgages), the Debtor's remaining debts would indisputably be primarily non-consumer."  Objection at 3.

The Debtor also cites to *Kelly v. Solot (In re Kelly)*, 70 B.R. 109 (B.A.P. 9th Cir. 1986), *rev'd*, 841 F.2d 908 (9th Cir. 1988) and *Gibbs v. Randolph (In re Randolph)*, 28 B.R. 811 (Bankr. E.D. Va. 1983).  In *Kelly*, the United States Bankruptcy Appellate Panel for the Ninth Circuit stated:

> [T]he exclusion of debts secured by real property is logical and consistent with the purpose behind § 707(b).  A debtor owning a family home usually has substantial debt secured by real property. The debt secured by the residence is usually three or four times (or greater) than the aggregate of unsecured debt.  Therefore, unless that secured debt is disregarded, all such debtors could be denied relief because their indebtedness would be *primarily* consumer debt; certainly in dollar amount.

- 8 -

*Kelly*, 70 B.R. at 112.  In *Randolph,* which dealt with an award of attorney's fees under Section 523(d), the court stated:

> The legislative history which accompanies this section indicates that the definition of "consumer debt ... does not include a debt to any extent the debt is secured by real property."  124 Cong. Rec. H11,090 (daily ed. Sept. 28, 1978); S17,406 (daily ed., Oct. 6, 1978). *See, cf. In re Burgess,* 22 B.R. 771, 772 (Bkrtcy. M.D. Tenn. 1982).  A debt which is secured by real property is not a consumer debt and a court may not award attorney's fees pursuant to 11 U.S.C. § 362(d) where the debt involved is not a consumer debt. *In re McKinney,* 18 B.R. 607, 612 (Bkrtcy. M.D. Ga. 1982).

*Randolph*, 28 B.R. at 813.

Ultimately, the Debtor relies on the legislative history cited above to argue that the Mortgage Loan should not be considered a consumer debt for purposes of Section 707(b)(1) and encourages the Court to adopt a totality of the circumstances test to determine whether the Debtor's debts are primarily consumer debts.  The Debtor maintains that the Court should look to the total number of the Debtor's business debts (eight) compared to the total number of his non-business debts (five) rather than relying on the total dollar amounts of the respective debts as advanced by the U.S. Trustee.

## III.    Relevant Statutory Provisions

Section 101(8) of the Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose."  11 U.S.C. § 101(8).

Section 707(b)(1) authorizes the Court to dismiss or convert a Chapter 7 case and provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1).

Section 707(b)(2)(A)(i) sets forth a mathematical formula for determining when a case is presumptively abusive and provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--
>
> > (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $10,275 [originally "$6,000", adjusted effective April 1, 2025], whichever is greater; or
> >
> > (II) $17,150 [originally "$10,000", adjusted effective April 1, 2025].

11 U.S.C. § 707(b)(2)(A)(i).  As set forth above, the Debtor indicated on his Form 122A that the presumption of abuse did not arise in his case while the U.S. Trustee's Statement of Presumed Abuse states there is a presumption of abuse.  If the Court determines a presumption of abuse exists, then the Court must determine whether the Debtor can rebut the presumption under Section 707(b)(2)(B).

Lastly, Section 707(b)(3) provides guidance on when the granting of relief would be considered abusive where the presumption of abuse does not arise or is rebutted.  This subsection provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider—
>
> > (A) whether the debtor filed the petition in bad faith; or
> >
> > (B) the totality of the circumstances … of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

To resolve the Motion for Summary Judgment, the Court must determine whether the Mortgage Loan is a consumer debt for purposes of Section 707(b)(1) and whether the Debtor's debts are primarily consumer debts. The Motion for Summary Judgment does not seek a determination that there is a presumption of abuse under Section 707(b)(2)(A)(i) or a determination that the totality of the circumstances of the Debtor's financial situation demonstrates abuse under Section 707(b)(3)(B). The parties agreed that these additional issues will be determined at the next stage of this proceeding.

**IV.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure (made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure) provides: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The standard for summary judgment is well-settled. The Court must consider all evidence in a light most favorable to the nonmoving party. *McLean v. Hildebrand (In re Hildebrand)*, 230 B.R. 72, 74 (Bankr. D. Md. 1999) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). The movant must establish that there are no material facts at issue and that he is entitled to judgment as a matter of law. *McLean v. Hildebrand (In re Hildebrand)*, 230 B.R. at 79 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Spriggs*, 242 F.3d at 183. The party seeking summary judgment has the initial burden of demonstrating the absence of any genuine issue of

material fact.  *Celotex Corp.*, 477 U.S. at 322.  Once the moving party has met its burden, the nonmoving party must produce sufficient evidence to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586-87.

In this case, there are no material facts in dispute and the narrow issues presented in the Motion for Summary Judgment are legal issues to be decided by the Court.

## V.    Analysis

To resolve the Motion for Summary Judgment, the Court must address two questions: (1) whether the Mortgage Loan is a "consumer debt" for purposes of Section 707(b)(1); and (2) whether the Debtor's debts are "primarily consumer debts" such that an abuse analysis under Section 707(b)(2) and/or Section 707(b)(3) is required.  For the reasons set forth below, the answer to both questions is yes.

### A.    Whether the Mortgage Loan is a "consumer debt" under Section 707(b)(1)

Section 101(8) defines "consumer debt" as debt "incurred by an individual primarily for a personal, family, or household purpose."  11 U.S.C. § 101(8).  The U.S. Trustee asserts that the statute is clear and unambiguous and makes no exception for home mortgages.  The U.S. Trustee further argues that there is no need to look beyond the plain language of Section 101(8), thereby rendering the legislative history of Sections 101(8) and/or 707(b) irrelevant to the Court's analysis.

The Debtor has stipulated that the Mortgage Loan was incurred for a personal, family, or household purpose.  Despite this stipulation, the Debtor maintains that the Mortgage Loan should not be considered "consumer debt" for purposes of Section 707(b)(1) because a mortgage loan is typically the largest type of debt an individual has and including it in the overall debt analysis unjustly favors a finding of presumed abuse to the detriment of a small business debtor.

At the hearing held on May 22, 2025, the Debtor agreed that the legislative history of a statute should not be used to overcome a statute's plain language. Nevertheless, the Debtor maintained that the legislative history referenced above is instructive because the wording of Section 707(b)(1) is not specific. The Debtor further argued that a home mortgage should be excluded from the Section 707(b) analysis because purchasing a home is typically the largest investment an individual makes for his family and that there is an underlying profit motive in home buying that takes a home mortgage outside the purview of consumer debt.

The Court has considered the parties' arguments and agrees with the U.S. Trustee that there is no need to consider anything beyond the plain language of Sections 101(8) and 707(b) to conclude that the Mortgage Loan is a consumer debt that must be included in the Section 707(b) debt analysis.

The task of applying and interpreting a statute "begins where all such inquiries must begin: with the language of the statute itself." *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). The statutory language "is also where the inquiry should end, for where … the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Id.* (citation omitted). For more than a century, the United States Supreme Court has dictated that a court's job is to apply the law as written and leave policy determinations to Congress. *See, e.g., N.Y. Cnty. Nat'l Bank v. Massey*, 192 U.S. 138, 146 (1904) ("We are to interpret statutes, not to make them.").

Congress knows how to draft statutes without making them more complicated than they need to be. Congress "does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns., Inc.*, 531 U.S. 457, 468 (2001). Moreover, courts must forego any invitation to import words into statutes that are simply not there. *See, e.g., Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (declining to enlarge a statute where a plain, non-absurd meaning is "in view").

"'[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" *Id.* at 534 (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (further citations omitted)).

    The Bankruptcy Code's definition of "consumer debt" makes no exception for secured debt or debt that a debtor intends to repay.  The definition is unequivocal so the Court need not look to the legislative history.  As opined by Judge Harner in *Durant*:

> The definition of consumer debt was introduced with the enactment of the Code in 1978.  11 U.S.C. § 101(8); *see also In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988) (discussing legislative history to definition of consumer debt, which was originally codified as section 101(7) of the Code and subsequently renumbered); *In re Hlavin*, 394 B.R. 441, 445 (Bankr. S.D. Ohio 2008) (same).  The language of section 101(8) of the Code is unambiguous, and courts generally employ a plain meaning approach to its application.  *See, e.g., In re Kelly*, 841 F.2d 908, 912 (9th Cir. 1988); *In re Lemma*, 393 B.R. 299, 301–302 (Bankr. E.D.N.Y. 2008); *Hlavin*, 394 B.R. at 445; *see also In re Harris*, 203 B.R. 46, 50 (Bankr. E.D. Va. 1994) (following approaches of *Booth* and *Kelly* ).  As such, many courts find it unnecessary or improper to consider the statute's legislative history.  *See, e.g., Kelly*, 841 F.2d at 912 ("As the Supreme Court has noted, 'legislative history, ... by traditional canons of interpretation[,] is irrelevant to an unambiguous statute.'"); *Lemma*, 393 B.R. at 302 ("The Court declines to look beyond section 101(8), into its legislative history to interpret its meaning, because the statute is unambiguous on its face.").  The Court agrees with this approach to statutory interpretation, but observes that the legislative history to sections 101(8) and 707(b) is broader than often acknowledged by courts invoking that legislative history to support a particular interpretation of the Code.

*Durant*, 586 B.R. at 218.  Judge Harner further stated:

> The role of legislative history in the context of section 101(8) arises frequently in cases involving home mortgages.  *See, e.g., In re Swenby*, 529 B.R. 705, 708 (Bankr. W.D. Wis. 2015); *In re Bertolami*, 235 B.R. 493, 495 (Bankr. S.D. Fla. 1999).  The legislative history from the 1978 hearings on the enactment of the Code includes statements that "'consumer debt does not include a debt to any extent the debt is secured by real property.'"  *Bertolami*,

235 B.R. at 495 (quoting 124 Cong Rec. H11090 (daily ed. Sept. 28, 1978); S17406 (daily ed. Oct 6, 1978)).  The court in *Bertolami* reviews the split in case law concerning the classification of home mortgages as consumer debt and ultimately concludes that "[i]n accordance with the *Kelly* Court's findings and reasonings, this Court will look to the clear and unambiguous language of § 101(8) instead of the Congressional Record Statements of Senator DeConcini and Representative Edwards pertaining thereto.  Section 101(8) does not exclude debt secured by real property or a residential mortgage from the definition of consumer debt.  Rather, it defines consumer debt as 'debt incurred ... for a personal, family, or household purpose.'  This Court interprets § 101(8) to mean ***all debt*** incurred for such purposes, rather than all debt except debt secured by real property."  *Id.* at 496 (emphasis in original).

*Id.* at 218 n.6.  Judge Harner continued:

> Nevertheless, as suggested above, the Court finds no need to rely on legislative history and focuses solely on the language of the statute itself.  Indeed, a review of the relevant terms used in the definition of consumer debt quickly clarifies its scope.  The Code defines the term consumer debt as a "debt incurred by an individual primarily for a personal, family, or household purpose."  11 U.S.C. § 101(8).  The Code, in turn, defines the term "debt" as a "liability on a claim," and the term "claim" to include "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. §§ 101(5), (12).  In addition, courts have interpreted the term "incur" to mean "to become liable to or to bring it down on oneself"; the term "primarily" to mean "of the first importance or ... fundamental"; and the term "purpose" to mean "an intention or an object set before oneself as an aim."  *White*, 49 B.R. at 872; *see also West*, 2017 WL 746250, at *10 (defining "incur" to mean " 'to suffer or to bring on oneself' ") (internal citations omitted); *In re Grillot*, 2017 WL 4286882, at *4 (Bankr. D. Kan. Sept. 22, 2017) (defining "purpose" to mean "that which one sets before him to accomplish; an end, intention, or aim, object, plan, project") (internal citations omitted).  The core of the consumer debt definition thus concerns debt that an individual debtor undertakes to serve her private affairs.

*Id.* at 219.

This Court adopts the reasoning set forth in *Durant* and agrees that the Bankruptcy Code's definition of "consumer debt" includes all debt incurred for personal, family, or household purposes – including home mortgages and other secured debt that a debtor continues to pay –

- 15 -

provided that the debt was incurred to serve the debtor's "private affairs." *Id.* If Congress wanted to except secured debt or debt that a debtor intends to pay from the definition of "consumer debt," then it could have carved out an exception in Sections 101(8) and/or 707(b); however, Congress did not.

Although the Court appreciates the Debtor's arguments that including home mortgages in the debt analysis unfairly skews the result in favor of the presumption of abuse and that homes are purchased with a profit motive in mind thereby transforming home mortgages into non-consumer transactions, the Court is not persuaded. Arguably, all family homes are purchased with the hopeful expectation that the property will increase in value over time. That may not be the sole or even primary purpose for every home purchase, but the Court is hard-pressed to envision a scenario where a homebuyer would purchase a home with the hope that its value does not appreciate over time. Regardless, the purchase of a residence with the desire that it will be a profitable investment for one's family does not remove a home mortgage from the reach of Section 707(b). It is still a debt incurred for a personal, family, or household purpose. There is nothing in the plain language of Sections 101(8) or 707(b) that warrants different consideration for home mortgages or other secured debt that a debtor continues to pay and for which there will be no personal liability discharged through the debtor's bankruptcy.

Additional support for the Court's conclusion is found in Section 1301, which stays certain actions against any individual who is liable on a consumer debt with a debtor in bankruptcy – *i.e.,* the "co-debtor stay." 11 U.S.C. § 1301. Section 1301(a) provides, in relevant part:

> Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a *consumer debt* of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless--

> (1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or
>
> (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

*Id.* (*emphasis added*).  This Court routinely sees motions seeking relief from the co-debtor stay with respect to home mortgages.  In fact, in addressing Sections 101(8) and 1301, this Court has previously stated:

> Section 1301 applies only to "consumer debts."  Section 101(8), in turn, defines a consumer debt as a "debt incurred by an individual primarily for a personal, family, or household purpose."  A debt securing a debtor's principal residence qualifies as a consumer debt.  *Matter of Booth,* 858 F.2d 1051, 1054–55 (5th Cir. 1988) (finding that debt secured by real property may be considered consumer debt for purposes of evaluating dismissal under Section 707(b)); *Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 912–913 (9th Cir. 1988) (same); *In re Johnson,* 115 B.R. 159, 162 (Bankr. S.D. Ill. 1990) (same).  *See also, In re Zersen,* 189 B.R. 732, 740 n. 4 (Bankr. W.D. Wis. 1995) (finding that a loan incurred by a debtor to purchase a family home is a consumer debt for purposes of Section 1301); *Harris v. Margaretten & Co. (In re Harris),* 203 B.R. 46, 50 (Bankr. E.D. Va. 1994) (same); *In re Gunderson,* 76 B.R. 167, 169 (Bankr. D. Or. 1987) (same).  *See also, Guaranty Sav. & Loan Ass'n v. Lowe (In re Lowe),* 109 B.R. 698 (W.D. Va. 1990) (finding that a debt secured by the debtor's family home constitutes a consumer debt for purposes of Section 523(d)).
>
> In this case, there is no real dispute that the Codebtor is an individual to whom Section 1301 applies or that Respondent's loan is a "consumer debt" under Section 1301.

*In re King*, 362 B.R. 226, 230 (Bankr. D. Md. 2007) (Catliota, J.).  Additionally, as succinctly recognized by another court:

> The term "consumer debt" is used throughout the Bankruptcy Code.  *See generally* 11 U.S.C. § 524(c)(6)(B) (excepting consumer debts secured by real estate from reaffirmation requirements); 11 U.S.C. § 707(b)(1) (providing for dismissal of cases filed by individual debtors under Chapter 7 "whose debts are primarily consumer debts" for substantial abuse); 11 U.S.C. § 1301(a) (staying actions against a co-debtor to collect consumer debt).  "[T]here is a natural presumption that identical words used in different parts of the same

act are intended to have the same meaning." *Atl. Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932).

*Swartz v. Strausbaugh* (*In re Strausbaugh*), 376 B.R. 631, 636 (Bankr. S.D. Ohio 2007).  Although Sections 707(b) and 1301 are unique to Chapters 7 and 13, respectively, the Court agrees that "consumer debt" has the same meaning in both contexts and that there is no basis to exclude home mortgages from the analysis under Section 707(b) while including home mortgages in the context of Section 1301.

Moreover, the Court notes that the bankruptcy court in *Randolph*, a case relied on by the Debtor, effectively overturned *Randolph* in reaching the opposite conclusion in a subsequent decision:

> Although there is a 1983 decision from this district holding that a debt secured by real property is not a consumer debt, *In re Randolph,* 28 B.R. at 811, there is more recent and more persuasive authority to the contrary.  I agree with the view, adopted by the following cases, that the purpose of the debt determines whether a debt is a consumer debt; consequently, a debt incurred to purchase an individual's residence is a consumer debt even though it is secured by a deed of trust on the realty.

*Harris v. Margaretten & Co., Inc.* (*In re Harris*), 203 B.R. 46, 50 (Bankr. E.D. Va. 1994) (citations omitted).

Similarly, the Debtor's reliance on *Kelly v. Solot (In re Kelly)*, 70 B.R. 109 (B.A.P. 9th Cir. 1986) is misplaced.  The Bankruptcy Appellate Panel's determination that debts secured by real property should be excluded from the Section 707(b) analysis was explicitly overturned by the United States Court of Appeals for the Ninth Circuit in *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 912 (9th Cir. 1988), where the Ninth Circuit stated: "[t]he statutory scheme so clearly contemplates that consumer debt include debt secured by real property that there is no room left for any other conclusion."  *Kelly*, 841 F.2d. at 912.

- 18 -

### B.        Whether the Debtor's debts are primarily consumer debts

Having concluded that the Mortgage Loan is a "consumer debt" that is included in the Section 707(b) analysis, the Court next considers whether the Debtor's debts are "primarily consumer debts," thereby triggering the application of Section 707(b)(1).

The U.S. Trustee urges the Court to adopt a bright-line rule that a debtor has primarily consumer debts if at least 51% of the total dollar amount of the debt consists of consumer debts. In support, the U.S. Trustee cites *In re Fox*, 521 B.R. 520, 523 n.1 (Bankr. D. Md. 2014) (Gordon, J.), which states that "Debtors' debts are 'primarily consumer debts' if more than 50% of the debts are 'consumer debts,'" and *In re Evans*, 334 B.R. 148, 150 (Bankr. D. Md. 2004) (Mannes, J.), which states that "'[p]rimarily' means more than 50%." The U.S. Trustee argues that a bright-line rule provides certainty and prevents pre-bankruptcy debt manipulation.

The Debtor encourages the Court to follow *In re Jones*, No. 08-05676-8-ATS, 2009 WL 102442 (Bankr. E.D.N.C. Jan. 12, 2009) and adopt a totality of the circumstances test to determine whether a debtor's debts are primarily consumer debts for purposes of Section 707(b)(1). This test would require the Court to look at the total number of the debtor's creditors as opposed to the total amount of debt, to remove secured debts that a debtor continues to pay and nondischargeable debts from the analysis, and to consider the overall financial position of the debtor. *Id.* at *2.

The Debtor also points to Section 1126, which deals with acceptance of a plan in a case under Chapter 11 of the Bankruptcy Code. The Debtor argues that Section 1126 has very specific requirements to determine if a class of claims has accepted a proposed plan. Specifically, Section 1126 provides: "[a] class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by

creditors[.]" 11 U.S.C. § 1126(c).  The Debtor states that Section 1126 makes it clear that Congress intended certain provisions of the Bankruptcy Code to be very specific while keeping other sections, particularly Section 707, broader.  The Debtor asserts that, if Congress intended for "primarily" in Section 707(b) to mean a majority of debt or a majority of creditors, then it would have specifically stated so.  Instead, the lack of specificity gives a court flexibility in determining whether a debtor's debts are primarily consumer debts.

The Debtor further argued at the summary judgment hearing that Section 707(b) was intended to prevent debtors with significant consumer debt from discharging that debt and was not intended "to punish our entrepreneurs who have a lot of business debt by making them pay all of it back and putting them within the 707(b) category."   Tr. of May 22, 2025 hearing at 21:15-23.  The Debtor maintains that, aside from the Mortgage Loan, which the Debtor intends to repay and will not be discharged, the majority of the Debtor's debt is business debt in both number and amount.  As such, the Debtor advocates for a more holistic approach to determining whether a debtor has "primarily consumer debt" as opposed to a bright-line rule.  The Debtor goes so far as to question the nature of the Mortgage Loan as a debt because, when one considers the definition of debt, which is defined as a "liability on a claim," the Debtor will have no liability on the Mortgage Loan once it is repaid.  Tr. of May 22, 2025 hearing at 24:14-20.

On this question, the Court finds that a more fluid approach to determining whether a debtor's debts are primarily consumer debts is the better approach.  The Court agrees with the U.S. Trustee that a bright-line rule may be easier to apply, but the Court is unwilling to adopt a stringent test based on a certain percentage of overall debt as was utilized in *Fox* and *Evans*, neither of which provided more than a sentence on the issue.  Instead, the Court considers the totality of the circumstances and assesses the Debtor's overall financial situation.

- 20 -

Having determined that the Mortgage Loan is a consumer debt that is required to be included in the Section 707(b) analysis, the Court concludes that the Debtor's debts are primarily consumer debts because the amount of the Debtor's debt incurred for a personal, family, or household purpose ($388,164.61 or 72%) is substantially higher than the amount of debt not incurred for a personal, family, or household purpose ($144,381.00 or 27%).[7]  The percentage breakdown of consumer versus business debt, combined with the relatively small difference in the number of consumer creditors (five) versus non-consumer creditors (eight), ultimately swayed the Court.  The Debtor's arguments that the Court should not consider debts that will not be discharged or secured debts that the Debtor intends to repay are simply too speculative.  The Debtor could decide at any point that he no longer wants to retain his residence and then any remaining personal liability would be included in the Debtor's discharge.  The Court is basing its decision on all of the Debtor's debt as of the date of filing (aside from the relatively small IRS Claim) without looking to how such debt will potentially be treated by the Debtor in the present or future.

## VI.    Conclusion

For the reasons stated herein, the Court concludes that the standard for summary judgment is met because there are no material facts in dispute and the U.S. Trustee is entitled to partial judgment as a matter of law.  The Mortgage Loan is a consumer debt, and the Debtor's debts are primarily consumer debts under Section 707(b)(1).  The next step is for the Court to determine whether there is a presumption of abuse under Section 707(b)(2)(A)(i), which sets forth a mathematical formula for determining whether the presumption arises.  If so, then the Court must determine whether the Debtor can rebut the presumption under Section 707(b)(2)(B).   If the presumption does not arise or is rebutted, then the Court must determine whether the granting of

[7] This calculation does not include the IRS Claim which, as set forth previously, is considered interstitial debt and accounts for less than 1% of the Debtor's debt.

- 21 -

relief would be an abuse of Chapter 7 under Section 707(b)(3)(B), which requires the Court to determine whether the totality of the circumstances of the Debtor's financial situation demonstrates abuse. The Court will enter an order consistent with this Memorandum Opinion and set this matter for a status conference so the Court and the parties can set an appropriate trial schedule.

cc:     Debtor
        Debtor's Counsel
        Chapter 7 Trustee
        Office of the United States Trustee

**END OF MEMORANDUM**